# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **ARDAMIS DARRELL SIMS**, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 16 C 10816 |
| ) | |
| **COUNTY OF COOK**, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM ORDER

Cook County Department of Corrections ("County Jail") pretrial detainee Ardamis Darrell Sims ("Sims") has utilized the Clerk's-Office-supplied form of Complaint Under the Civil Rights Act, Title 42 Section 1983 ("Section 1983") to target the County of Cook, former Chicago Superintendent of Police Garry McCarthy, no fewer than 16 members of the Chicago police force and Assistant State's Attorney Todd Kleist as defendants in his claim of the violation of his constitutional rights. Sims has accompanied his Complaint with another Clerk's-Office-supplied form, an In Forma Pauperis Application ("Application"), and with a self-prepared Motion for Appointment of Counsel ("Motion"). But before this memorandum order turns to some of the obvious problems with Sims' filings, both 28 U.S.C. § 1915 ("Section 1915") and our Court of Appeals' caselaw construing and applying that statute require this Court to make the calculation and determination called for by Section 1915(b)(1).

In that respect the printout from Sims' trust fund account at the County Jail, supplied in conjunction with the Application, ends with an entry dated October 31, 2016 -- a date that necessarily preceded the end of "the 6-month period immediately preceding the filing of the complaint" (Section 1915(a)(2)), which under the "mailbox rule" prescribed by Houston v. Lack,

487 U.S. 266 (1988) was presumptively November 17 or 18. This Court's law clerk accordingly requested, and was provided by the cooperative trust fund account officer at the County Jail, the information covering that gap period, thus enabling this Court to calculate that the average monthly deposits to Sims' account during the relevant six-month period (Section 1915(b)(1)(A)) came to exactly $95, 20% of which (id.) amounts to $19. Accordingly Sims is assessed an initial partial filing fee of $19, and the County Jail trust fund officer is ordered to collect that amount from Sims' trust fund account there and to pay it directly to the Clerk of Court ("Clerk"):

> Office of the Clerk
> United States District Court
> 219 South Dearborn Street
> Chicago IL 60604
>
> Attention: Fiscal Department.

After such payment the trust fund officer at the County Jail (or at any other correctional facility where Sims may hereafter be confined) is authorized to collect monthly payments from his trust fund account in an amount equal to 20% of the preceding month's income credited to the account. Monthly payments collected from the trust fund account shall be forwarded to the Clerk each time the amount in the account exceeds $10 until the full $350 filing fee is paid. Both the initial payment and all future payments shall clearly identify Sims' name and the 16 C 10816 case number assigned to this action. To implement these requirements, the Clerk shall send a copy of this order to the County Jail trust fund officer.

To turn to Sims' Complaint itself, it is an excrutiatingly detailed six page narrative that he has described as having been "assisted by a detainee Larry Young." That narrative need not be repeated or even summarized here, for it has already been admirably summarized in the November 30, 2016 Order issued by this Court's colleague Honorable Virginia Kendall in Case

No. 16 C 10768, Sims v. Doe 1, et al., an action that Sims filed three days before filing the Complaint here. In that case Sims has advanced an attempted Bivens claim against United States Marshals predicated on their asserted involvement in the identical conduct that forms the gravamen of this action brought against Chicago police personnel.

This Court can put aside for the present the interesting legal question whether the fact that Fed. R. Civ. P. 8(a) speaks of a "claim for relief" as the operative basis for a federal complaint may preclude a plaintiff from splitting a single claim for relief into two lawsuits, one advancing a separate theory of recovery (the purported Bivens claim asserted in the case before Judge Kendall) and the other invoking a Section 1983 theory of recovery (as in this case). That possible question will be left for another day.

In the meantime, a number of the problems posed in the case before Judge Kendall are not present here, because in this action Sims has expressly named the asserted state tortfeasors, as he has not done as to the claimed federal malfeasants in Judge Kendall's case. But other problems raised by the attached pages 4 through 6 of Judge Kendall's November 30 Order are shared by this action when, as here, Sims advances them against the many state defendants he has named in this lawsuit.

Because Sims has specifically named that host of state defendants (though he has not specified just what particular conduct he ascribes to each), he would seem to face no potential limitations problems in this action if he can get his act together in a properly shaped Section 1983 mold. That however is clearly beyond his individual capacity, and he plainly needs professional help that only legal counsel (and no "jailhouse lawyer") can supply. Because Sims' self-prepared Motion does not provide any showing of efforts on his part to obtain counsel on his own, something that our Court of Appeals requires as a precondition to his seeking to enlist the

Court's aid by calling on a member of the District Court's trial bar to perform that function, three copies of the Clerk's-Office-supplied form of Motion are being transmitted to Sims together with a copy of this memorandum order.

If Sims fails to complete and transmit two counterparts of that form to the Clerk's Office in time to be received there on or before December 23, 2016, this action will be dismissed for want of prosecution . If however he timely submits the properly-filled-out forms, this Court will take appropriate action to call upon a member of the trial bar to assist Sims.

_____
Milton I. Shadur
Date: December 7, 2016          Senior United States District Judge

In any event, the Court questions whether Plaintiff has a tenable claim under either 42 U.S.C. § 1983 or 28 U.S.C. § 1331. The Court questions, for example, whether Plaintiff has standing to challenge the search warrant at issue when the car officers located in the motel parking lot did not belong to him. *See, e.g., United States v. Amaral-Estrada*, 509 F.3d 820, 826-27 (7th Cir. 2007) (discussing the circumstances in which a driver who borrows a car with the owner's permission may acquire standing to challenge the search of the vehicle) (citations omitted).

Plaintiff's claim that the officers violated his constitutional rights because there was no arrest warrant is equally dubious. If the U.S. Marshals Fugitive Apprehension Unit was involved in the arrest, then there was presumably a fugitive arrest warrant in effect. *See, e.g., Freeman v. Brown*, No. 11 CV 08599, 2015 WL 2399353, at *2-3 (N.D. Ill. May 18, 2015) (Chang, J.) (relating the events surrounding a plaintiff's arrest, including the probable involvement of a fugitive team due to the existence of a fugitive warrant; *Ruehman v. Vill. of Palos Park*, 842 F. Supp. 1043, 1050 (N.D. Ill. 1993) (describing the Cook County Sheriff's Fugitive Warrants Division as "the division of the Sheriff that is responsible for tracking the status of warrants"). By definition, fugitive law enforcement teams track individuals for whom arrest warrants are outstanding. And "someone with an outstanding warrant 'has no right to be at large, and so suffers no infringement of his rights when he is apprehended.'" *Banks v. Fuentes*, 545 F. App'x 518, 521 (7th Cir. 2013) (unpublished opinion) (quoting *Atkins v. City of Chicago*, 631 F.3d 827 (7th Cir. 2011)).

Regardless, irrespective of whether the arresting officers had an arrest warrant, Plaintiff would seem to have pled himself out of court by listing multiple grounds for probable cause to arrest him. "The existence of probable cause to arrest is an absolute defense to any § 1983 claim against a police officer for false arrest or 714 false imprisonment." *Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 713-14 (7th Cir. 2013) (citing *Mustafa* v. City of Chicago*, 442 F.3d 544, 547 (7th

4

ATTACHMENT

Cir. 2006). In the instant case, eyewitness identification, corroboration by an officer who had investigated an earlier robbery, and video surveillance footage that showed a suspect with Plaintiff's demographic characteristics all strongly support a finding of probable cause. Moreover, an investigative alert, "[l]ike a warrant," usually authorizes a suspect's arrest "because other officers already had made a determination of probable cause." *Banks*, 545 F. App'x at 521 (7th Cir. 2013) (citations omitted).

In addition, it would seem that Plaintiff has no potentially viable claim relating to the officers' forced entry into his motel room. The Fourth Amendment generally requires that officers entering a dwelling must knock on the door and announce their identity and purpose before attempting forcible entry. *Weeks v. City of Chicago*, No. 12 C 10056, 2014 WL 3865852, at *5 (N.D. Ill. Aug. 6, 2014) (Kennelly, J.) (citing *Richards v. Wisconsin,* 520 U.S. 385, 387 (1997)). In *Hudson v. Michigan,* 547 U.S. 586 (2006), the U.S. Supreme Court reiterated that, where feasible, the police must "knock and announce" their presence before breaking into a house that they are authorized to search. *See also United States v. Watson*, 558 F.3d 702, 704 (7th Cir. 2009) (acknowledging that a criminal defendant has a civil remedy irrespective of the application of the exclusionary rule).

However, there are exceptions to this rule. No-knock entries are permitted if necessary, for example, to prevent physical harm to police officers, a prisoner from escaping, or the destruction of evidence. *See, e.g., Wilson v. Arkansas,* 514 U.S. 927, 936 (1995). "[W]hen assessing whether a constitutional violation has occurred, the Fourth Amendment inquiry is one of 'objective reasonableness' under the circumstances." *Molina ex rel. Molina v. Cooper*, 325 F.3d 963, 973 (7th Cir. 2003) (citations omitted). The Court of Appeals noted in *Molina* that the officers had information that Plaintiff had a criminal record, was present at the home to be searched, and had access to weapons. *Id.* "Thus, the officers had ample reason to be concerned about their personal safety." *Id.* The Court of Appeals therefore concluded that no constitutional violation had occurred when police officers failed to knock and announce their presence. *Id.* This case is factually very similar to *Molina*: Plaintiff was already either a suspect or a criminal defendant in connection with a prior armed robbery (the complaint and exhibits are unclear on this point), the officers knew from surveillance that Plaintiff was holed up in the motel room with a possible accomplice or hostage, and he was known to have displayed a handgun during the suspected commission of the armed robberies that triggered his arrest. All of these factors tend to suggest that law enforcement officers had good reason to enter the room in the manner they did.

For the foregoing reasons, the Court dismisses the complaint on file without prejudice. The Court nevertheless grants Plaintiff the opportunity to submit an amended complaint, assuming he still believes that he has a cognizable civil rights claim, and that he is able to identify the officers whom he accuses of wrongdoing before the statute of limitations expires.

Any amended complaint must be submitted on the Court's required form, and the form must be completed in its entirety. *See* Local Rule 81.1 (N.D. Ill.). The amended complaint also must comport with Fed. R. Civ. P. 11, which provides that by signing a pleading, a party represents to the Court that his claims are warranted by existing law and that the factual contentions have evidentiary support or likely will have evidentiary support after further

investigation. Fed. R. Civ. P. 11(b). Plaintiff must write both the case number and the judge's name on the amended complaint, sign it, and return it to the Prisoner Correspondent. Plaintiff must also provide a USM-285 (Marshals service) form for each Defendant named in the amended complaint. The Court advises Plaintiff that an amended pleading supersedes the original complaint and must stand complete on its own. Therefore, all allegations against all Defendants must be set forth in the amended complaint, without reference to the original complaint.

The Clerk will provide Plaintiff with an amended civil rights complaint form, instructions, and a blank USM-285 form along with a copy of this order. Failure to submit an amended complaint by the date set forth above will result in dismissal of this lawsuit in its entirety for failure to state a claim.

As a final concern, the Court observes that Plaintiff has brought five separate lawsuits in the past two weeks. Under 28 U.S.C. § 1915(g), a prisoner accumulates a "strike" for every federal case or appeal that is dismissed as frivolous, malicious, or for failure to state a claim. If and when a prisoner accumulates three "strikes," he or she is ineligible for *in forma pauperis* in future cases or appeals in the absence of imminent danger of serious physical injury. *Id.* Accordingly, Plaintiff should carefully perform some basic legal research before drafting and filing any court submissions.


Date:   11/30/2016                                          /s/ Virginia M. Kendall
                                                            U.S. District Court Judge